UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| GINA ALLENDE,<br><br>        Plaintiff,<br>vs.<br><br>AD ASTRA RECOVERY SERVICES INC.,<br><br>        Defendant. | Case No.: 18-cv-1103<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Gina Allende is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes, namely a personal consumer loan.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from her arose from a consumer transaction or series of consumer transactions with an agreement to defer payment.

6. Defendant Ad Astra Recovery Services, Inc. ("Ad Astra") is a debt collection agency with its principal offices located at 7330 West 33rd Street N. Ste 118, Wichita, Kansas 67205.

7. Ad Astra is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Ad Astra is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Ad Astra is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

10. Plaintiff obtained a personal consumer loan from "Speedy Cash" on or about September 3, 2015.

11. Upon information and belief, Plaintiff's personal consumer loan was a "precomputed loan" as that term is defined in Wis. Stat. § 138.09(7)(a)(1).

12. Plaintiff used the proceeds from the Speedy Cash loan only for personal, family, or household purposes, such as paying household bills and other expenses.

13. On or about September 21, 2017, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

15. Upon information and belief, Exhibit A is a form debt collection letter used by Ad Astra to attempt to collect alleged debts.

16. Upon information and belief, as of the date of Exhibit A, the alleged "Speedy Cash" loan debt was owed to the original creditor, and Ad Astra had not purchased the receivables associated with the account.

17. Upon information and belief, Exhibit A is a response to Plaintiff's prior request for verification of the debt.

18. Exhibit A is misleading and confusing to the unsophisticated consumer because it does not identify the name of the creditor to whom the debt is owed.

19. Exhibit A states:

> We are in receipt of your request for validation of the account we are pursuing for collection.
>
> We reviewed the supporting documentation you provided and examined the account file with our client and determined that the facts in reference to this debt are consistent with the information provided by our client. Our investigation provided the following additional details concerning the debt:

Exhibit A.

20. Exhibit A further states:

| | |
|---|---|
| Original Creditor: | Speedy Cash<br>3527 N. Ridge Road<br>WICHITA KS 67205 |
| Type of Loan: | Installment |
| Date of Loan: | 09/03/2015 |
| Loan Number: | ███3428 |
| Date of Default: | 09/16/2015 |
| Assignment Date: | 12/16/2015 |

Exhibit A.

21. Exhibit A states that Ad Astra reviewed Plaintiff's request for verification "with our client and determined that the facts . . . are consistent with the information provided by our client."

22. Exhibit A states that "Speedy Cash" is the name of the "Original Creditor."

23. Exhibit A states that the debt's "Assignment Date" was December 16, 2015.

3

24. On its face, <u>Exhibit A</u> does not state the name of the "current creditor." *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016) ("The letters provided no additional details about the relationship between Asset Acceptance and Fulton. Nowhere did they say who *currently* owned the debt.") (emphasis added).

25. <u>Exhibit A</u> states that Ad Astra reviewed its account information with its "client" but does not identify who Ad Astra's "client" is.

26. <u>Exhibit A</u> states that Speedy Cash is the "Original Creditor" but also states that the debt was assigned on December 16, 2015.

27. A debt collector does not disclose the identity of the creditor by naming an entity without explicitly or implicitly making clear in the letter that the entity is the current creditor to whom the debt is owed. The unsophisticated consumer is aware that most debts are freely assignable and are regularly sold to third party debt buyers.

28. The debt collector may disclose the identity of the creditor to whom the debt is owed by expressly identifying that entity as the "creditor," the "current creditor," or other non-confusing language, but must do so explicitly to ensure the letter is not ambiguous on the question of the current owner of the debt. *Janetos*, 825 F.3d at 322.

29. Where a debt collector identifies an entity as the "original creditor" without otherwise making it clear that the debt collector is collecting the debt on behalf of that same entity, it implies that the current creditor is someone other than the original creditor. *E.g., Bentkowsky v. Benchmark Recovery Inc.*, 2015 U.S. Dist. LEXIS 12694, at *1-2 (N.D. Calif. Feb. 2, 2015) ("Although the letter identified the correct creditor, it did not identify it as the current creditor. It instead labeled the creditor as the 'Original Creditor.' The letter therefore was confusing and left the reader unaware of the current creditor, in violation of the FDCPA.").

4

Case 2:18-cv-01103-LA     Filed 07/18/18     Page 4 of 18     Document 1

30. The apparent contradiction between the plain meanings of the terms "creditor" and "original creditor" implies to the unsophisticated consumer that the "original creditor" is not the current creditor. *Bentkowsky*, 2014 U.S. Dist. LEXIS 191481, at *2 (N.D. Calif. Oct. 28, 2014) ("If anything, the letter implies that the current creditor is someone different from the 'Original Creditor,' such as, perhaps, [the debt collector] itself."); *see* 15 U.S.C. § 1692g(a)(5) (the consumer may request "the name and address of the *original creditor*, if different from the *current creditor*"); *see also Francisco v. Doctors & Merchants Credit Serv.*, 1998 U.S. Dist. LEXIS 12234, at *20 (N.D. Ill. July 29, 1998) ("*Apparent* contradictions of validation notices are analogous to literally false statements in trademark law, in the limited sense that they are thought to cause confusion by their very nature; in other words, apparent contradictions are thought to evidence per se confusingness, to borrow Judge Posner's phrase.").

31. A debt collection letter that implies that a debt has been assigned must make it clear that the original creditor is the current creditor. *Janetos*, 825 F.3d at 322 ("Defendants do not explain how, in light of this language, an understanding of Asset Acceptance's former role would have shown its current role."); *Gritters v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 63010, at *23 (N.D. Ill. Apr. 13, 2018) ("knowing the identity of the current creditor 'potentially affects the debtor in the most basic ways.'") (quoting *Janetos*, 825 F.3d at 325).

32. Exhibit A exacerbates the confusion by stating that the account's "Assignment Date" was December 16, 2015. The "assignment" of a consumer debt generally refers to the sale of the debt's receivables, though under some circumstances, it can be mere assignment for collection. *See, Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132-33 (E.D.N.Y. June 29, 2007) ("To the least sophisticated consumer, the word 'assigned' may be vague. It could mean (1) that Defendant has purchased and continues to own the debt or (2) an unidentified

5

owner of the debt has retained Defendant for purpose of collecting the debt. The fact that the sentence states that CHASE 'sold' the debt and that the debt was 'assigned' to Defendant lends additional credibility to the latter explanation because it potentially implies that a 'sale' of the debt is different from an 'assignment' of the debt."); *see also, Janetos*, 825 F.3d at 321 (a collection letter that states the debt was "transferred" is ambiguous because "'transfer could mean either conveyance of title or assignment for collection[.]'").

33. Moreover, <u>Exhibit A</u> also contains the following:

| | |
|---|---|
| **Creditor Balance:** | $889.58 |
| **Collection Fees:** | $0.00 |
| **Current Balance:** | $889.58 |

<u>Exhibit A</u>.

34. The oblique reference to collection fees in <u>Exhibit A</u> is deceptive, misleading, and confusing to the unsophisticated consumer.

35. The ambiguous zero itemization of collection fees implies to the unsophisticated consumer that these fees would be imposed if she does not pay the debt as soon as possible:

> There are several possible ways the statement could be interpreted. For example, it is possible that, as the defendant suggests, an "unsophisticated consumer" might understand the statement to be explaining that no part of the debt is a 'collection fee' even though the Verizon agreement allows for one. On the other hand, it is also possible that an "unsophisticated consumer" would interpret the statement to mean that there is no "collection fee" now but that one could be assessed later on.

*Tylke v. Diversified Adjustment Serv.*, 2014 U.S. Dist. LEXIS 153281, at *6-7 (E.D. Wis. Oct. 28, 2014).

36. Had <u>Exhibit A</u> simply stated that interest was not accruing, or stated that the interest *rate* was zero, it would not have engendered such gratuitous and unnecessary confusion. *See Duarte v. General Revenue Corp.*, 2017 U.S. Dist. LEXIS 188441, at *7-9 (N.D. Ill. Nov. 15, 2017) ("Clearly, a statement that the interest rate is zero cannot possibly be a threat to charge

6

interest. To the contrary, it is more a concession that interest can't and won't be charged. In contrast, a cost balance of zero could imply future cost charges.").

37. Moreover, neither Ad Astra nor the creditor could impose collection fees on Plaintiff's precomputed consumer loan account because such fees are prohibited by the WCA.

38. Plaintiff's precomputed consumer loan, which was payable in installments, was a "consumer credit transaction" under the WCA. Wis. Stat. § 421-427.

39. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

40. Precomputed consumer loans are, by definition, consumer credit transactions. *See,* Wis. Stat. § 421.301(10); *see also,* Wis. Stat. § 138.09(7)(k).

41. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. Feb. 27, 1996).

42. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction. *Patzka*, 917 F. Supp. at 659 ("Wisconsin law prohibits the attachment of collection fees to consumer debts, even if the fee is separately negotiated, which in

7

this case it was not."); *see also, Tylke*, 2014 U.S. Dist. LEXIS 153281, at *8 ("in order for the addition of a collection fee to be impermissible under Wis. Stat. § 422.202, the agreement must constitute a 'consumer credit transaction,' as defined in Wis. Stat. § 421.301(10).").

43. Because precomputed consumer loans are consumer credit transactions, Exhibit A, with its nebulous statement about "collection fees," falsely states or implies that Ad Astra has a right to add collection fees to the debt.

44. Even if a provision of any agreement between Plaintiffs and the original creditor would purport to permit the creditor or the debt collector to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *Patzka*, 917 F. Supp. at 659; *see also, Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

45. Exacerbating the misleading and confusing effect, alongside the statement that the current amount of the collection fees is zero, Exhibit A states that the "Creditor Balance" and the "Current Balance" are both $889.58.

46. The purpose of stating the "Creditor Balance" alongside the "Collection Fees" and "Current Balance" is to imply to the unsophisticated consumer that, when collection fees are imposed, the "Current Balance" will exceed the "Creditor Balance."

47. Plaintiff was confused by Exhibit A.

48. The unsophisticated consumer would be confused by Exhibit A.

49. Plaintiff had to spend time and money investigating Exhibit A.

50. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

51. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med.*

*Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

52. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

53. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

54. 15 U.S.C. § 1692e(2)(A) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

55. 15 U.S.C. § 1692e(2)(A) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

56. 15 U.S.C. § 1692e(2)(B) specifically prohibits the "false representation of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

57. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

58. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

59. 15 U.S.C. 1692g(a) states, in part:

> (a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless

11

> the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (2) the name of the creditor to whom the debt is owed;

15 U.S.C. § 1692g(a)(2).

60. To satisfy § 1692g(a)(2), the debt collector must state the name of the creditor in a non-confusing manner:

> The recipients of these letters would therefore find themselves obliged to guess who currently owned the debts in question. Since the name was on the letters, some might correctly guess that Asset Acceptance was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided. Compliance with the clear requirements of § 1692g(a)(2) demands more.

*Janetos*, 825 F.3d at 323.

61. Failure to provide the required disclosures within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos*, 825 F.3d at 324 ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a)."); *see also, e.g., Walls*, 2012 U.S. Dist. LEXIS 68079, at *5 ("We reject defendants' contention in their reply brief that what plaintiff is complaining of is 'immaterial' information. The statute expressly requires identification of the creditor to whom the debt is owed . . . .").

62. For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10), Defendants' omission is a material violation of the FDCPA.

63. Misrepresentation of the creditor's identity is a misrepresentation of the character and legal status of the debt. 15 U.S.C. § 1692e(2)(A). *Janetos*, 825 F.3d at 324 ("Knowing the current creditor 'potentially affects the debtor in the most basic ways, such as what the debtor

12

Case 2:18-cv-01103-LA   Filed 07/18/18   Page 12 of 18   Document 1

should write after 'pay to the order of' on the payment check to ensure that the debt is satisfied.") (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. Mar. 1, 2013).

64. Plaintiff does not bring any claims under 15 U.S.C. § 1692g. However, with respect to identification of the creditor, a debt collector cannot use ambiguous or confusing language about the name of the creditor in any communication, whether or not the initial communication adequately discloses the identity of the creditor. *See, Janetos*, 825 F.3d at 322 ("It is true that for claims under § 1692e[], *or at least those based on its general prohibitions* against false, deceptive, or misleading statements and practices, we have sorted cases into three categories.") (emphasis added).

65. Plaintiff's claims as to Defendant's confusing representations about the identity of the creditor are not "based on [§ 1692e's] general prohibitions" but are rather specifically addressed in the FDCPA. 15 U.S.C. § 1692e(2)(A).

66. Likewise, Plaintiff's claims as to Defendant's confusing representations about whether Defendant may impose collection fees are not "based on [§ 1692e's] general prohibitions" but are rather specifically addressed in the FDCPA. 15 U.S.C. § 1692e(2)(B).

### *The WCA*

67. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

68. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

69. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

70. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

71. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

72. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

73. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

74. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

75. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. Exhibit A states that Ad Astra "examined the account file with our client."

78. Exhibit A states that the "Original Creditor" is Speedy Cash.

79. Exhibit A does not state the name of the current creditor.

80. Exhibit A states that the debt's "Assignment Date" was December 16, 2015.

81. Exhibit A represents to the consumer that Speedy Cash had assigned the debts in question to some undisclosed third party, or potentially to Ad Astra itself.

82. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

## COUNT II – FDCPA

83. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Exhibit A states that Ad Astra is collecting "Collection Fees" in an amount of "$0.00."

85. Exhibit A implies to the unsophisticated consumer that Ad Astra may add collection fees to the "Current Balance" of Plaintiff's precomputed consumer loan debt in the future.

86. <u>Exhibit A</u> threatens the unsophisticated consumer with the prospect that Ad Astra can, and intends to, add collection fees to Plaintiff's precomputed consumer loan debt.

87. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(B), 1692e(5), and 1692e(10).

## COUNT III – WCA

88. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. <u>Exhibit A</u> states that Ad Astra is collecting "Collection Fees" in an amount of "$0.00."

90. <u>Exhibit A</u> implies to the unsophisticated consumer that Ad Astra may add collection fees to the "Current Balance" of Plaintiff's precomputed consumer loan debt in the future.

91. <u>Exhibit A</u> threatens the unsophisticated consumer with the prospect that Ad Astra can, and intends to, add collection fees to Plaintiff's precomputed consumer loan debt.

92. Defendant violated Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

## CLASS ALLEGATIONS

93. Plaintiff brings this action on behalf of a Class consisting of:

    (a) All natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) where the debt was incurred for personal, family or household purposes, (d) and the letter in the form of <u>Exhibit A</u> was mailed between July 18, 2017 and July 18, 2018, inclusive, (e) and was not returned by the postal service.

94. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

95. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendant complied with the FDCPA and WCA.

96. Plaintiff's claims are typical of the claims of the members of each Class. All are based on the same factual and legal theories.

97. Plaintiff will fairly and adequately represent the interests of the members of each Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

98. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

99. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 18, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)

3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com